WILLIAM T. BURNHAM v. SAMUEL W. FISHER.

*Assumpsit, to recover money won in gambling, by the defendant, from the clerk of the plaintiff.*

Where B. entrusted his clerk with power to purchase goods, borrow money, and execute notes in his name, and the clerk borrowed money for the purpose of gambling, (but of this, the lender had no knowledge,) and also took money from the store of B. for the same purpose, and lost the money so borrowed and taken from the store, in gambling ; it was held,—1, that the money so borrowed, became the money of B.—2, that B. could recover, in an action for money had and received, the money so borrowed and taken from the store and lost, of the winner, the same having passed·from the clerk into his hands against law, and without consideration.

And B. having failed, during the pendency of the suit, and made a special assignment for the benefit of his creditors, and assigned with other claims, the claim in suit, *it was held*, that B. and his assignee had authority to release the interest of the clerk of B., and that the release being executed before the deposition of the clerk was taken, the deposition was admissible.

ASSUMPSIT for money had and received.

The action was brought to recover money, which the defendant had won from one William Decker, a clerk of the plaintiff.

Plea, general issue, and trial by jury.

On trial, the plaintiff proved, that the said William Decker was clerk in his hat and cap store, at St. Johnsbury, and as such clerk, had power to purchase goods, borrow money, and execute notes in the plaintiff's name ; and that said Decker had executed notes in the plaintiff's name ; but that said Decker's business was to sell goods, which the plaintiff purchased and forwarded to his store at St. Johnsbury, and pay the money over by the plaintiff's direction, or forward it to Montpelier, where the plaintiff resided. That said Decker was clerk for the plaintiff from the summer of 1850, till sometime after said money was lost at *gambling*, and that about the 8th, 10th and 11th days of November, 1851, he lost the money for which this action was brought, in playing cards with the defendant, at three different times.

That about $247 of the money, said Decker received on the 7th or 8th day of November, 1851, from the cashier of the Passumpsic Bank, on a note discounted for the plaintiff, with directions from the plaintiff to forward the same to him at Montpelier. That about $115 of the money, said Decker borrowed on the plaintiff's credit, of five individuals, at St. Johnsbury, on the 9th or 10th day of November, 1851, with the intention, at the time he borrowed it, of using the same to gamble with the defendant; but this purpose was not known to those persons who lent the money on the plaintiff's credit. And that about $70, the said Decker took from plaintiff's store, being money received for goods sold. The plaintiff's evidence also tended to prove, that Decker informed the defendant, at the time he won the first sum of money, about $210, that it belonged to the plaintiff. It also appeared that Decker had no right to use the money of the plaintiff, except in the plaintiff's business, other than to the extent of his wages. It further appeared in evidence, that soon after the loss of the money by Decker, the plaintiff learned the fact, and after that, and with plaintiff's knowledge, Decker took money belonging to plaintiff, from the store, and paid the amount borrowed. And it also appeared, that since the commencement of this action, the plaintiff has failed, and made a special assignment of this, with other claims, to one Eras-

tus Hubbard, for the benefit of his creditors; but no claim in favor of the plaintiff against said Decker was included in said assignment, and the claims assigned were all enumerated in said assignment. Upon the trial of the cause, the plaintiff produced the deposition of said Decker, to which was attached a release signed by the plaintiff and said assignee. To which deposition, the defendant objected, for the reason that it did not appear certainly, that said Decker had received said release before he gave this deposition ; and also that said Hubbard, as assignee, had no right to discharge the said Decker, which objections were overruled by the court, and the deposition admitted. The plaintiff also proved, that the discharge attached to Decker's deposition was delivered to said Decker during the June Term of the County Court, 1852.

The defendant claimed,

1. That the plaintiff's remedy was against Decker, who lost the money, and not against him.

2. That if the plaintiff was entitled to recover at all, he could not recover for the money which Decker borrowed on his credit, to gamble with the defendant.

3. That the plaintiff should have made a demand of the defendant, before commencing this suit.

The court charged the jury, that the plaintiff would be entitled to recover for the amount which Decker received from the Bank, the amount borrowed on plaintiff's credit, and the amount taken from the store, which was received by the defendant; and that if defendant knew that the money won by him of Decker, belonged to the plaintiff, no demand by the plaintiff was necessary.

Verdict for plaintiff for $452 62.

Exceptions by defendant.

*A. J. Willard* and *Peck & Colby* for defendant.

By the common law, money lost at gaming could not be recovered back; such contracts were treated as good between the parties, and even going so far as to enable the one who won, to sue for and recover his money, if not paid. It is only by virtue of the statute, that the loser in gaming can recover his money back.

The statute only gives the remedy to him who loses the money, not to third persons. The plaintiff in this case was not the one who lost the money, but his agent or clerk, with whom plaintiff trusted his funds.

We·claim that plaintiff's lien is on his˙clerk, Decker, who took the funds, and lost them in playing with defendant.

It appears from the deposition of Decker, that after he had lost the money upon the first day, he then informed defendant that it was the plaintiff's, and that he must have a sight of it again; the defendant then did not know, till after he had won the money, but that it belonged to Decker.

We claim, that when a principal trusts his money with his agent, and that agent pays out the same on his own debts, or disposes of it contrary to the directions of the principal,· and the person with whom the agent deals, has no knowledge but that the money belongs to the agent,'the principal must look to his agent for his funds, and cannot recover them of the third person.

But if the plaintiff can recover in this case, it is only upon the principle that no consideration whatever passed, as between Decker and defendant, and that defendant stands in the same position he would, had he found the money.

If this view is correct, plaintiff should have made a demand, before commencing the suit.

Was the $115, borrowed of five individuals, for the purpose of gambling with defendant, ever the plaintiff's money ? We think not, and that he cannot recover for that, if he can for the balance. Decker had no authority to hire money in the plaintiff's name, for his own use, and if plaintiff afterwards permitted Decker to make use of his funds to pay these debts, he did it in his own wrong and must suffer the loss.

The case shows that Decker remained in the employ of plaintiff for a time, after he had taken his funds, as claimed in this suit, and lost the same in playing with defendant. This fact, we think, has a strong tendency to prove that plaintiff was knowing to the use which Decker made of his funds, and if knowing to the fact, or so far ratifying Decker's doings, as to keep him in his employ, and pay his borrowed money for gambling transactions, he should·suffer the loss of keeping such a person in his employ, and not ask the aid of a court of law, to make good the bad luck of his agent, &c.

The deposition of Decker was not admissible.

The plaintiff has failed since the commencement of this suit, and made a special assignment to one Erastus Hubbard, of this with other claims, for the benefit of creditors.

Hubbard, as assignee, has signed a discharge to Decker, thereby admitting that in the assignment of the claim against defendant, it carried with it the claim on Decker, although his name does not appear in the assignment.

The assignee takes the claim, with all the rights belonging or attached to it in the hands of the assignor.

Supposing the suit had been assumpsit, upon a joint and several note executed by Decker and defendant to plaintiff, and that defendant alone had been sued; would not the assignment of the suit against defendant, include also the claim against Decker upon the same note ?

If by the assignment, Hubbard, the assignee, became the possessor of the claim against Decker, (it being for the same funds,) as we think he did, had he the right to discharge Decker ? Hubbard was the mere agent to collect and receive the funds assigned, and pay over to plaintiff's · creditors. There was no question of the liability of Decker to pay this claim, and the assignee had no right to discharge him upon the ground that it might be collected of defendant.

The assignee, in this case, occupies a similar situation to that of an agent, or selectman of a town, who, our courts have decided, cannot discharge the interest of a witness. *Angel* v. *Pownal,* 3 Vt. 461. *Gates* v. *Foot,* 12 Johns. 8. 1 Stephens, Nisi Prius, 353, and cases cited. 1 American Leading Cases, 548–549.

*F. F. Merrill, Bartlett & Roberts* and *S. W. Slade* for plaintiff.

1. The plaintiff can recover this money of defendant. In *Clark* v. *Johnson & Co.,* Lofft's Rep. 756, J. W. being clerk to the plaintiff, a brewer, and receiving money, and also negotiable notes, from customers in ordinary course of the plaintiff's business, paid several sums to defendants upon chances of the coming up of tickets, in the State lottery of the year 1772, contrary to the act of parliament of that year. The court allowed the plaintiff to recover, in an action for money had and received. LORD MANSFIELD said : " Now wherever money, or anything that can be ascertained, passes " without consideration, the plaintiff, the true owner, comes in his " own right, no matter whether it be paper or cash, provided it be " ascertained. And in this case, notes were more easily ascertain- " ed than the bank note the highwayman had put off at Hatfield; " the postboy changed it.

"You remember the case of *Reynolds* and *Golightly*, where the "money was traced through several hands. In all these cases, the "original owner may come as plaintiff, and say, 'You came improp- "erly by it ; you have no right ; you cannot retain it against me, "who have the right.'

"I think this decision may be of great service to the public. "It may be somewhat difficult to trace, but whenever it can be "traced, it shall be recovered. In prohibited contracts, illegal con- "tracts without consideration, you take the money, if it be the "money of the master, subject to his right to recover it, when it "shall be ascertained. And I think this contract was null; the "property always continued, and he ought to recover."

In *Mason* v. *Waite*, 17 Mass. 560, the plaintiff entrusted some bank bills to a carrier, who lost them at a *faro table*, and the court allowed him to recover the same of the winner, in an action for money had and received. This action lies, to recover money belonging to the plaintiff which defendant in equity and good conscience cannot retain. *Vt. State Bank* v. *Stoddard*, 1 D. Chip. 157. *Penniman* v. *Patchin et al.*, 5 Vt. 346. *Wiggin* v. *Foss*, 4 N. H. 294.

Money entrusted to a minor son, for a specific purpose, and applied by him, without the assent of the father, in compounding for a crime committed by the son, may be recovered by the father from the receiver. *Burnham* v. *Holt*, 14 N. H. 367. See also Comp. Stat. Chap. 110, § § 12 and 13.

2. The objection to the deposition of Decker is overruled in the case of *Christy* v. *Smith*, 23 Vt. 663.

But in the case at bar, evidence *aliunde* was introduced, proving the release to have been made and delivered to the witness before he gave his deposition. *Oaks* v. *Weller*, 16 Vt. 63.

The plaintiff's release discharged the interest of Decker, as Hubbard had no interest in the claim against Decker. And even if Hubbard was the assignee of this suit, it would seem that his release would be sufficient. 1 Greenleaf's Ev. § 427.

3. No demand on defendant was necessary, he having knowledge of the facts. *Birks* v. *Trippett*, 1 Saund. 32.

The only object of a demand is to impose an obligation or duty upon a party ; but a demand in this case could add nothing to the liability and obligation already imposed on defendant, by his own

wrongful act, in taking the money from plaintiff's agent, with full knowledge that it was against plaintiff's consent, and for an illegal purpose.

In many cases, the law allows a party to be sued without any demand, where in fact he has incurred no blame; and to require it in favor of a breaker of the law, and a willful defrauder of the plaintiff's money, would be a very *partial* and degrading *courtesy* in the law. *Wiggin* v. *Foss*, 4 N. H. 294. *Hawley* v. *Sage*, 15 Conn. 52. *Spence* v. *Thompson*, 11 Ala. 746.

4. The plaintiff can recover for the borrowed money. The lenders could not sue for it, for they are not in privity, having given credit to plaintiff, and insisted upon payment from him. Plaintiff has paid the lenders, because he was bound in law to pay them; Decker having had sufficient authority to borrow and to bind the plaintiff, &c.

The opinion of the court was delivered by

BENNETT J. Though the plaintiff's clerk was clothed with extensive powers in regard to the management of his principal's business; yet there is no reason to suppose, (notwithstanding what was said in argument,) that the plaintiff was in any way *privy* to the *gambling* between his clerk and the defendant; and the question is, can the plaintiff follow the money, lost by the clerk, into the hands of this defendant ? The plaintiff's money was wrongfully taken by the clerk, and passed into the hands of this defendant, without consideration.

The gambling contract between the clerk and the defendant was against law and null; and the plaintiff may well say to the defendant; " You took the money subject to my right, and in equity and good conscience, you cannot retain it against me." If the clerk had passed the money to the defendant upon a valuable consideration, and *bona fide* on the part of the defendant, though in bad faith on the part of the clerk, as it respected his principal, the question would have been quite a different one from the present one.

The plaintiff cannot, under the present circumstances, be divested of any rights, and the defendant must respond to him the money which he has illegally obtained the possession of.

It is said, that so far as the clerk borrowed the money to gamble

with, though upon the plaintiff's credit, yet it never became his money, and that, at all events, so far, the plaintiff cannot recover. But there can be no distinction. The clerk had been in the practice of borrowing money upon the credit of the plaintiff, for his legitimate business, and had authority so to do. The lender in the present case acted in *good faith*, though the clerk acted in *bad faith*, and the lender cannot be responsible for the perversion of the funds by the clerk, and the plaintiff was liable for the money borrowed, and has in fact repaid it.

Upon such a state of facts, the money borrowed became the plaintiff's, to all intents and purposes. If not his, whose was it? It did not continue to be the money of the lender, and it would be strange, if it became the money of the clerk.

We see no objection to the admission of the deposition of the clerk, after the execution of the release of his interest. The release was executed by the plaintiff, and also by his assignee, and its form has not been objected to. There can be no doubt of the authority of the releasors to execute the release.

The claim which the plaintiff might make for the money against the clerk, was not, as I understand it, assigned for the benefit of creditors ; and if it had been, it would not, probably, have altered the case.

The release, it appears, was delivered to the witness before his deposition was taken.

The judgment of the County Court is affirmed.